# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# SHREVEPORT DIVISION

| | |
|---|---|
| ALYCE GAINES JOHNSON SPECIAL TRUST | CIVIL ACTION NO. 10-0016 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| EL PASO E & P CO., L.P. | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM ORDER

Before this Court is a Motion to Dismiss Pursuant to Rule 12(b)(6) [Record Document 5] filed on behalf of the Defendant, El Paso E&P Company, L.P. ("El Paso"). For the reasons stated herein, El Paso's Motion to Dismiss Pursuant to Rule 12(b)(6) [Record Document 5] shall be **DENIED.**

## BACKGROUND

On August 2, 1950, S.E. Johnson and Robert S. Johnson ("Lessors"), Plaintiff's ancestors in title, executed an Oil, Gas and Mineral Lease ("the Lease") in favor of Frank W. Scheller ("Lessee"), Defendant's ancestor in title. The Lease, "a standard, printed form oil and gas contract printed on an M.L. Bath form that is Louisiana Bath form 14-BRI-24," "grants, leases and lets exclusively unto lessee for the purpose of investigating, exploring, prospecting, drilling, and mining for and producing oil, gas and all other minerals" approximately 1230 acres located in Desoto Parish, Louisiana. [Record Document 1, Ex. A]. The Lease requires the Lessee to pay a one-eighth (1/8) royalty, an amount "which was an average and acceptable market rate at the time the contract was executed nearly sixty (60) years ago." Id. The Lease also requires the Lessee to pay fifty dollars ($50.00) per acre as a lease bonus. Id.

The Lease covers property which is situated within a producing oil and gas field known as the "Bethany/Longstreet Field," and that at the time the Lease was executed in 1950, the Bethany/Longstreet Field contained almost exclusively producing wells at the 6000 feet level, with no well deeper than 7500 feet from the surface of the earth. [Complaint ¶ VI]. Since June 2009, Plaintiff has received offers from numerous third parties to lease the mineral formation known as the Haynesville Shale, located at a depth below 10,400 feet from the surface, for a one-fourth (1/4) mineral royalty and as much as ten thousand ($10,000) dollars per acre bonus royalty. Id. at ¶ XIII; First Amended Complaint ¶ XXV.A. Upon receiving such offers, Plaintiff sought a release or some other written document from Defendant stating to the public that neither the Haynesville Shale nor other deeper, inaccessible mineral formations were intended by the parties to be included in or be a part of the Lease, but Defendant refused to grant such release. Id. at XXIII.

On January 4, 2010, Plaintiff filed a Complaint in the United States District Court for the Western District of Louisiana, Shreveport Division, seeking a declaratory judgment that the Lease does not apply to the Haynesville Shale and other deeper formations that were not capable of being explored and developed at the time of the execution of the Lease. Id. at ¶ XXIV. In addition, Plaintiff seeks to recover compensatory damages on the grounds that it "has been denied and has lost the opportunity to lease the oil, gas and other minerals at the Haynesville Shale formation . . . due to the wrongful and unreasonable failure by Defendants to execute and record a release of its claim under the August 2, 1950

lease"¹ and that Defendant's agents trespassed on the property at issue on September 23, 2009 "for the purpose of drilling an oil and gas well."² Id. at ¶¶ XXV.B, LXIX. Defendant responded by filing the instant motion to dismiss pursuant to Rule 12(b)(6) on the basis that Plaintiff's Complaint and First Amended Complaint fail to state any claims upon which relief may be granted. See Record Document 5.

## RULE 12(b)(6) DISMISSAL

Federal Rule of Civil Procedure 12(b)(6) allows for dismissal of an action "for failure to state a claim upon which relief can be granted." While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, in order to avoid dismissal, the plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007); see also, Cuvillier v. Taylor, 503 F.3d 397, 401 (5th Cir. 2007). A plaintiff's obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. The Supreme Court recently expounded on the Twombly standard, explaining that a complaint must contain sufficient

---

¹Since June 2009, Plaintiff has received offers from third parties to lease the Haynesville Shale located under the property at issue for a one-fourth (1/4) royalty and as much as ten thousand ($10,000) dollars per acre as a bonus royalty. [First Amended Complaint ¶ XXV.A].

²According to Plaintiff, Defendant has indicated that it has or will attempt to drill a horizontal well on the land of a third party in Section 29-T14N-R15W, which encompasses 400 acres of land and minerals owned by Plaintiff. [Complaint ¶¶ LXIV-LXVI; First Amended Complaint ¶ LXXV]. Plaintiff contends such action constitutes or will constitute a continuing trespass upon and under Plaintiff's land and requests Defendant be ordered during the pendency of these proceedings to deposit and file into the registry of the Court the revenues from such well (in an amount representing Plaintiff's interest in any such well less 1/8th royalty). Id.

factual matter to state a claim to relief that is plausible on its face. Ashcroft v. Iqbal, – U.S. –, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In evaluating a motion to dismiss, the Court must construe the complaint liberally and accept all of the plaintiff's factual allegations in the complaint as true. See In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2009).

## LAW AND ANALYSIS

In its Motion to Dismiss, Defendant characterizes Plaintiff's lawsuit as one in which "Plaintiff principally seeks to reform, rescind or cancel an oil, gas and mineral lease granted by its predecessors in title." [Record Document 5]. Defendant seeks to dismiss Plaintiff's claims of reformation, rescission and cancellation on the ground that Plaintiff's Complaint and First Amended Complaint lack sufficient factual content to support such claims. Id. Plaintiff objects to Defendant's characterization of this lawsuit, however, stating this suit "is NOT . . . a suit to reform a suit to cancel or a suit to rescind" but is simply "a contract dispute to determine the intention of the original parties to the 1950 Contract." [Record Document 9, p. 5]. Defendant does not deny that the law provides Plaintiff a remedy or cause of action to determine the intention of the parties to a contract; rather, Defendant argues this claim likewise fails because "Plaintiff fail[ed] to allege or establish any ambiguity in the Lease at issue in the suit." Id. at p.2.

Interpretation of a contract requires the Court to determine the common intent of the parties. La. C.C. Art. 2045. When the words of a contract are clear and explicit and lead to no absurd consequences, the Court need not look any further in search of the parties'

intent. La. C.C. Art. 2046. Consequently, parole or extrinsic evidence is generally inadmissible on the issue of intent. See Blanchard v. Pan-OK Prod. Co., Inc., 755 So.2d 376, 381 (La.App. 2 Cir. 2000). However, when the terms of the written contract are ambiguous, the Court may look beyond the four-corners of the document to ascertain the parties' intent. See id. "A contract is considered ambiguous on the issue of intent when it lacks a provision bearing on that issue or when the language used in the contract is uncertain or is fairly susceptible to more than one interpretation." Id. (citing Noel v. Discus Oil Corp., 714 So.2d 105, 107 (La.App. 2 Cir. 1998).

Plaintiff's Complaint and First Amended Complaint alleges that the Lease, a standard, printed form oil and gas contract, "allowed for customary vertical drilling and the usual production by ordinary methods which existed in 1950" but "did not provide for or allow horizontal or directional drilling which did not exist and/or was not permissible at that time or for a time period exceeding the next 55 years." [Complaint ¶ IV]. According to Plaintiffs, a certain mineral formation located at a depth below 10,400 feet from the surface, now known as the "Haynesville Shale", "was not capable of being investigated, explored, prospected, drilled or mined with any reasonable expectation of producing oil or gas in a commercially profitable manner due to the lack of technology that existed in 1950." Id. at ¶ XIII. Plaintiff avers that at the time of execution of the Lease in 1950, neither party "had any intention of attempting to explore and develop" the Haynesville Shale and had no "intention or expectation" that the Haynesville Shale would be covered by the Lease.[3]  Id.

---

[3]In the alterative, Plaintiffs alleges that should this Court find that the Lease does in fact cover the Haynesville Shale and other mineral formations that were inaccessible at the time the Lease was executed, "then it should be found and held that the Lease is exclusively and solely a pure vertical drilling lease, which was the only type of lease

at ¶ XIV. Plaintiff contends the intention to exclude the Haynesville Shale and other deeper formations from the Lease agreement is evidenced by the lack of technology necessary to extract gas from the shale and the fact that, for at least fifty-five (55) years after execution of the Lease, "no attempts were made by Lessee . . . to investigate, explore, prospect, drill, mine or produce oil and gas" from the Haynesville Shale." Id. at ¶¶ XV-XVIII.

Plaintiff's Complaint also includes the following allegations regarding ambiguity of the Lease:

- At the time of the execution of the [Lease] between the parties, the mineral formation known today as the Haynesville Shale together with hundreds of other formations extending to approximately 42 million feet beneath the surface of lessor's property, could not be subject to the purposes of the [Lease] due to the lack of technology to access and develop those formations, therefore the clauses specifically describing the [Lease]'s purpose and the Lessee's duties and obligations there under are doubtful because they do not specifically describe which mineral formations are to be included and which are to be excluded in the Contract and it is unclear as to which mineral formations Lessee's bilateral duties and obligations were to apply.

- According to the terms of the [Lease], no mineral formations were exempted or excluded from the duties and obligations imposed upon the Lessee in accordance with the purpose of the [Lease], thus those clauses of the Contract are unclear and unambiguous since it is doubtful that those clauses were intended to apply to inaccessible mineral formations such as the Haynesville Shale and other deeper formations since they were inaccessible in 1950.

- The [Lease] is ambiguous and unclear due to doubtful clauses that do not adequately describe what depth mineral formations were intended to be included in the [Lease] and do not clearly provide which mineral formations are or are not subject to the duties and obligations imposed upon the Lessee and which are stated to be the purpose of the [Lease].

Id. at ¶¶ XXX, XXXI, XLIV.

---

existing in 1950." [Complaint ¶ LXVII].

At this early stage of the litigation, the Court is not at liberty, and specifically declines, to discuss or opine on the substance of Plaintiff's factual allegations or declare the intent of the parties insofar as it relates to the mineral formations intended to be covered by the Lease. But having reviewed Plaintiff's Complaint and First Amended Complaint in its entirety, and noting the Plaintiff's express allegations that the Lease is "unclear" and "ambiguous," the Court finds Plaintiff has satisfied its pleading burden and pled sufficient facts which, taken as true, "state a claim to relief that is plausible on its face." See Ashcroft v. Iqbal, – U.S. –, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). Although Defendant may be correct in arguing Plaintiff has not pointed to any ambiguity in the specific *terms* of the Lease, see Record Document 10, p.3, this argument ignores Louisiana law which provides that a contract or lease may be ambiguous if the language used "is uncertain or is fairly susceptible to more than one interpretation" *or* if the contract or lease "lacks a provision bearing on that issue." See, supra, Blanchard, 755 So.2d at 381. Whether or not the Lease is ambiguous is an issue left to subsequent discovery and motion practice.

In addition to Plaintiff's claim for a declaration regarding interpretation of the Lease and the parties' intentions thereto, Plaintiff's Complaint and First Amended Complaint include a claim for damages and attorney's fees resulting from the Defendant's alleged "wrongful and unreasonable failure . . . to execute and record a release of its claim" [First Amended Complaint ¶ XXV.A, XXV.B], a claim for trespass [Id. at ¶¶ LXVIII-XXVI], and, in the alternative, a claim of forfeiture based on the failure of the Defendant to reasonable and diligently develop the Plaintiff's minerals [Id. at ¶¶ XXVII- LXXIX; Record Document 9, p.13]. Each of these claims are likewise sufficiently supported by Plaintiff's factual

allegations and must survive Defendant's Rule 12(b)(6) motion.  See Complaint and First Amended Complaint.

## CONCLUSION

Accordingly, for the foregoing reasons,

**IT IS ORDERED** that Defendant's Motion to Dismiss Pursuant to Rule 12(b)(6) [Record Document 5] be and is hereby **DENIED.**

**IT IS FURTHER ORDERED** that this matter be and is hereby **referred** to the Magistrate Judge for a scheduling conference.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 4th day of August, 2010.

S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE