**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| ALYCE GAINES JOHNSON SPECIAL TRUST | CIVIL ACTION NO. 10-0016 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| EL PASO E & P CO., L.P. | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before this Court is a Motion for Reconsideration [Record Document 15] filed on behalf of the Defendant, El Paso E&P Company, L.P. ("El Paso"). El Paso moves for reconsideration of the Court's August 4, 2010 Memorandum Ruling and Order denying El Paso's Motion to Dismiss Pursuant to Rule 12(b)(6). See Record Documents 11-12. El Paso seeks a ruling from this Court reconsidering, clarifying and amending "its Memorandum Order solely in connection with Plaintiff's claim that the Lease is ambiguous, because the long-standing substantive Louisiana law on mineral rights is contrary to the Court's ruling." [Record Document 15 at 2]. In opposition, Plaintiff argues that the Court did not declare the lease ambiguous and made a ruling consistent with the law. [Record Document 27]. For the reasons stated herein, El Paso's Motion for Reconsideration [Record Document 15] shall be **GRANTED.**

## BACKGROUND

On August 2, 1950, S.E. Johnson and Robert S. Johnson ("Lessors"), Plaintiff's ancestors in title, executed an Oil, Gas and Mineral Lease ("the Lease") in favor of Frank

W. Scheller ("Lessee"), Defendant's ancestor in title.[1] The Lease, "a standard, printed form oil and gas contract printed on an M.L. Bath form that is Louisiana Bath form 14-BRI-24," "grants, leases and lets exclusively unto lessee for the purpose of investigating, exploring, prospecting, drilling, and mining for and producing oil, gas and all other minerals"

---

[1]The Louisiana Mineral Code was enacted in 1974 and went into effect on January 1, 1975. Acts 1974, No. 50, § 1. Even though this Lease was signed in 1950, some twenty-five years before the Mineral Code was enacted, the Louisiana Mineral Code nonetheless governs its interpretation. See LA. R.S. § 31:214 ("The provisions of this Code shall apply to all mineral rights, including those existing on the effective date hereof; but no provision may be applied to divest already vested rights or to impair the obligation of contracts."). As the comments make clear:

> There are strong reasons why the Mineral Code should be retrospective, at least in the sense that to the extent possible it should apply to existing rights. There are many mineral servitudes, mineral royalties, and *mineral leases* outstanding at any given point in time. If comprehensive mineral legislation were made applicable only to rights created after its effective date, the number of outstanding rights at that time would assure that there would be two clear and distinct bodies of mineral law in the state for many years to come. One would be the "old law" as developed by analogy to provisions of the Civil Code would apply to rights already existing on the effective date of the legislation. The other would consist of the Mineral Code and the interpretive jurisprudence applicable to rights created after enactment of the Mineral Code. The resultant difficulties in judicial administration are readily discernible. Additionally, the purpose of codification would be substantially frustrated.
>
> The chosen approach to this problem is to adopt a general principle making the provisions of the code retrospective in operation to the extent not violative of the state and federal constitutions. Thus, unless an individual can satisfy a court that he is deprived of a vested right without just compensation or that the obligations of a contract are impaired, the rules specified in the Mineral Code apply to both existing and future rights.

LA. R.S. § 31:214, cmt. (emphasis added).

approximately 1230 acres located in Desoto Parish, Louisiana. [Record Document 1, Ex. A].[2] The Lease requires the Lessee to pay a one-eighth (1/8) royalty, an amount "which was an average and acceptable market rate at the time the contract was executed nearly sixty (60) years ago." Id. The Lease also required the Lessee to pay fifty dollars ($50.00) per acre as a lease bonus. Id.

The Lease covers property which is situated within a producing oil and gas field known as the "Bethany/Longstreet Field," and that at the time the Lease was executed in 1950, the Bethany/Longstreet Field contained almost exclusively producing wells at the 6000 foot subsurface level, with no well deeper than 7500 feet from the surface of the earth. [Complaint ¶ VI]. Since June 2009, Plaintiff has received offers from numerous third parties to lease the mineral formation known as the Haynesville Shale, located at a depth below 10,400 feet from the surface, for a one-fourth (1/4) mineral royalty and as much as ten thousand ($10,000) dollars per acre bonus royalty. Id. at ¶ XIII; First Amended Complaint ¶ XXV.A. Upon receiving such offers, Plaintiff sought a release or some other written document from Defendant stating to the public that neither the Haynesville Shale nor other deeper, inaccessible mineral formations were *intended* by the parties to be included in or be a part of the Lease, but Defendant refused to grant such release. Id. at XXIII.

On January 4, 2010, Plaintiff filed a Complaint in the United States District Court for the Western District of Louisiana, Shreveport Division, seeking a declaratory judgment that the Lease does not apply to the Haynesville Shale and other deeper formations that were

[2]The Court would like to note at the outset that no amendments have been made to the "granting clause"of the original lease.

not capable of being explored and developed at the time of the execution of the Lease. Id. at ¶ XXIV. In addition, Plaintiff seeks to recover compensatory damages on the grounds that it "has been denied and has lost the opportunity to lease the oil, gas and other minerals at the Haynesville Shale formation . . . due to the wrongful and unreasonable failure by Defendants to execute and record a release of its claim under the August 2, 1950 lease" and that Defendant's agents trespassed on the property at issue on September 23, 2009 "for the purpose of drilling an oil and gas well."[3] Id. at ¶¶ XXV.B, LXIX. Defendant responded by filing a motion to dismiss pursuant to Rule 12(b)(6) on the basis that Plaintiff's Complaint and First Amended Complaint fail to state any claims upon which relief may be granted. See Record Document 5. The Court issued a Memorandum Ruling and Order on August 4, 2010 denying Defendant's motion to dismiss. [Record Documents 11-12]. Defendant responded by filing this present Motion for Reconsideration. [Record Document 15]. El Paso moves this Court to reconsider, clarify and amend its Ruling to hold as follows:

(1) That the Granting Clause of the printed Bath Form Lease at issue is clear and unambiguous; and

[3]According to Plaintiff, Defendant has indicated that it has or will attempt to drill a horizontal well on the land of a third party in Section 29-T14N-R15W, which encompasses 400 acres of land and minerals owned by Plaintiff. [Complaint ¶¶ LXIV-LXVI; First Amended Complaint ¶ LXXV]. The Complaint and Amended Complaint do not indicate whether this proposed well is to be a "Haynesville Shale" well. Plaintiff contends such action constitutes or will constitute a continuing trespass upon and under Plaintiff's land and requests Defendant be ordered during the pendency of these proceedings to deposit and file into the registry of the Court the revenues from such well (in an amount representing Plaintiff's interest in any such well, less a 1/8th royalty). Id.

  (2) That since there is no clear, unmistakable language to limit or exclude certain depths, the Lease extends to all depths underlying the surface.

See Record Document 15-1.

**RULE 12(b)(6) DISMISSAL**

Federal Rule of Civil Procedure 12(b)(6) allows for dismissal of an action "for failure to state a claim upon which relief can be granted." While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, in order to avoid dismissal, the plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007); see also, Cuvillier v. Taylor, 503 F.3d 397, 401 (5th Cir. 2007). A plaintiff's obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. The Supreme Court recently expounded on the Twombly standard, explaining that a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. Ashcroft v. Iqbal, – U.S. –, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In evaluating a motion to dismiss, the Court must construe the complaint liberally and accept all of the plaintiff's factual allegations in the complaint as true. See In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2009).

## LAW AND ANALYSIS

In diversity cases such as these, federal courts must apply the substantive law of the forum state. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); Ashland Chem. Inc. v. Barco Inc., 123 F.3d 261, 265 (5th Cir.1997). In this case, the parties acknowledge that Louisiana's substantive law controls. According to the Fifth Circuit:

> [t]o determine Louisiana law, we look to the final decisions of the Louisiana Supreme Court. See id. In the absence of a final decision by the Louisiana Supreme Court, we must make an Erie guess and determine, in our best judgment, how that court would resolve the issue if presented with the same case. See id. In making an Erie guess, we must employ Louisiana's civilian methodology, whereby we first examine primary sources of law: the constitution, codes [in this case the Louisiana Mineral Code], and statutes. Id. (quoting Lake Charles Diesel, Inc. v. Gen. Motors Corp., 328 F.3d 192, 197 (5th Cir.2003)); Prytania Park Hotel, Ltd. v. Gen. Star Indem. Co., 179 F.3d 169 (5th Cir.1999). "Jurisprudence, even when it rises to the level of *jurisprudence constante*, is a secondary law source in Louisiana." Prytania Park Hotel, 179 F.3d at 169 (footnote omitted); see also Am. Int'l Specialty Lines Ins. Co., 352 F.3d at 261 (quoting Transcon. Gas Pipe Line Corp. v. Transp. Ins. Co., 953 F.2d 985, 988 (5th Cir.1992)). Thus, although we will not disregard the decisions of Louisiana's intermediate courts unless we are convinced that the Louisiana Supreme Court would decide otherwise, we are not strictly bound by them. Am. Int'l Specialty Lines Ins. Co., 352 F.3d at 261.

In re Katrina Canal Breaches Litigation, 495 F.3d 191, 296 (5th Cir. 2007).

"A mineral lease is a contract by which the lessee is granted the right to explore for and produce minerals." LA. R.S. § 31:114. Under Louisiana law, mineral leases are construed as leases generally and, wherever pertinent, codal provisions applicable to ordinary leases are applied to mineral leases. Musser Davis Land Co. v. Union Pac.

Resources, 201 F.3d 561, 565 (5th Cir.2000); Frey v. Amoco Production Co., 603 So.2d 166, 171 (La.1992); St. Romain v. Midas Expl., Inc., 430 So.2d 1354, 1356 (La.App. 3d Cir .1983); see also, LA. R.S. § 31:2.

Interpretation of a contract requires the Court to determine the common intent of the parties. LA. CIV. C. art. 2045. When the words of a contract are clear and explicit and lead to no absurd consequences, the Court need not look any further in search of the parties' intent. LA. CIV. C. Art. 2046. Consequently, parole or extrinsic evidence is generally inadmissible on the issue of intent. See Blanchard v. Pan-OK Prod. Co., Inc., 755 So.2d 376, 381 (La.App. 2 Cir. 2000). However, when the terms of the written contract are ambiguous, the Court may look beyond the four-corners of the document to ascertain the parties' intent. See id. "A contract is considered ambiguous on the issue of intent when it lacks a provision bearing on that issue or when the language used in the contract is uncertain or is fairly susceptible to more than one interpretation." Id. (citing Noel v. Discus Oil Corp., 714 So.2d 105, 107 (La.App. 2 Cir. 1998).

The Lease at issue, correctly described as "a standard, printed form oil and gas contract printed on an M.L. Bath form that is Louisiana Bath form 14-BRI-24," by its own terms "grants, leases and lets exclusively unto lessee for the purpose of investigating, exploring, prospecting, drilling, and mining for and producing oil, gas and all other minerals" on approximately 1230 acres located in Desoto Parish, Louisiana. [Record Document 1, Ex. A]. Louisiana courts have found the "granting clause" of the various Louisiana Bath Form Leases to be broad and unambiguous. See Noel v. Discus Oil Corp., et al, 714 So.2d 105, 110 (La. App. 2 Cir. 1998) ("The original lease [Bath's La. Spec. 14-BR1-2A-4 (5-66)], of course, is unrestricted as to mineral formations or zones and grants Discus the right to

explore for and produce 'oil, gas and all other minerals' from the leased property."). This Court has reviewed every case in Louisiana that has discussed or referenced a Bath Form Lease. In no case has any court found the language in the "granting clause" of any Bath Form Lease to be ambiguous.[4] While the Court stated in its earlier Memorandum Ruling that "[w]hether or not the Lease is ambiguous is an issue left to subsequent discovery and motion practice" [Record Document 11 at 7], the Court now realizes that its previous ruling is in tension with and not in keeping with longstanding, consistent Louisiana jurisprudence. The Court may have ruled that *de jure* the Lease is not ambiguous, but that ruling has the unintended net effect of holding that the Louisiana Bath Form Lease is *de facto* ambiguous. It is not. El Paso is correct that this Court's previous ruling is contrary to Louisiana jurisprudence.

Land in Louisiana has a specific and defined meaning. According to LA. CIV. C. art. 462 cmt. (c), "[l]and may be defined as portions of the surface of the earth." "Unless otherwise provided by law, the ownership of a tract of land carries with it the ownership of everything that is directly above or under it." LA. CIV. C. art. 490. As the Louisiana Civil Code makes clear Louisiana property law embraces the colorful Latin maxim of *cujus est solum ejus est usque ad coelum et ad inferos* ("for whoever owns the soil, it is theirs up to Heaven and down to Hell").

Plaintiff argues "Defendant's esoteric discussion of the Louisiana law dealing with ownership is just that–the rules applicable to ownership, not lease. The rights that flow from ownership are not the same as those that arise in a lease." [Record Document 27 at

---

[4]This Court would note that given this premise's long and consistent treatment by the courts, it has reached the status of *jurisprudence constante.*

14]. However, the extent of a landowner's ownership interest in his land is a crucial part of this analysis because, according to the Louisiana Mineral Code, "[a] landowner may convey, reserve or lease his rights to explore and develop his *land* for production of minerals and reduce them to possession." LA. R. S. § 31:15 (emphasis added).

In 1950, Plaintiff's ancestor did not place any limitations on his grant of mineral rights to Lessee. The jurisprudence supports the notion that the granting clause is unrestricted. As such, the granting clause is unambiguous and there is no need to determine the intent of the parties. The unambiguous language of the Bath Form Lease conveyed to the lessee's the right to investigate, explore, prospect, drill, mine for, and produce oil, gas and all other minerals without limitations as to depth, or, in the spirit of the Latin maxim, all the way to Hell. The cases in Louisiana jurisprudence show that mineral lessors realized the broad grant of mineral rights in the original Bath Form Leases and have attempted in more recent years to limit them with amendments establishing depth limitations. See Blanchard, et al v. Pan-OK Production Co., Inc., et al., 755 So.2d 376 (La. App. 2 Cir. 2000) and Noel v. Discus Oil Corp., et al, 714 So.2d 105 (La. App. 2 Cir. 1998). The language of these oil and gas lease amendments, not the original Bath Form Lease granting clause, is typically the subject of litigation. However, there are no amendments to the subject Bath Form Lease to interpret in this case, only the granting clause of a 1950 Bath Form Lease, which contained no limitations as to depth on the grant of mineral rights to the Lessor or his successor.

In the Court's Memorandum Ruling on the motion to dismiss, this Court specifically held:

> Although Defendant may be correct in arguing Plaintiff has not pointed to any ambiguity in the specific *terms* of the Lease, see Record Document 10, p.3, this argument ignores Louisiana law which provides that a contract or lease may be ambiguous if the language used "is uncertain or is fairly susceptible to more than one interpretation" *or* if the contract or lease "lacks a provision bearing on that issue." See, supra, Blanchard, 755 So.2d at 381. Whether or not the Lease is ambiguous is an issue left to subsequent discovery and motion practice.

[Record Document 11 at 8]. The Court erred on this point. While these cases do stand for this broad proposition, they are factually dissimilar to the case before the Court. In both Blanchard and Noel, the courts were faced with an *amendment* to the original "granting clause" of a standard Bath Form Lease. 755 So.2d at 380 and 714 So.2d at 106. In both instances, the Courts were forced to go beyond the ambiguous language of the amendments to determine the intent of the parties.

This Court relied on these two cases for its previous holding that the intent of the parties could not be divined from the language of the Bath Form Lease. Upon further review and consideration, this Court must reconsider its previous ruling in this case. Louisiana jurisprudence has consistently demonstrated that the standard Bath Form Lease is unambiguous, insofar as the "granting clause" is concerned. That clause is broad and unrestricted unless limited by an amendment. No such amendments have been presented to this Court.

Even though El Paso does not seek reconsideration of the rest of the Court's Memorandum Ruling [Record Document 11], this Court's reconsideration of its prior ruling and subsequent granting of said motion requires the Court to review Plaintiff's remaining claims. According to the Court's Memorandum Ruling:

> In addition to Plaintiff's claim for a declaration regarding interpretation of the Lease and the parties' intentions thereto, Plaintiff's Complaint and First Amended Complaint include a claim for damages and attorney's fees resulting from the Defendant's alleged "wrongful and unreasonable failure . . . to execute and record a release of its claim" [First Amended Complaint ¶ XXV.A, XXV.B], a claim for trespass [Id. at ¶¶ LXVIII-XXVI], and, in the alternative, a claim of forfeiture based on the failure of the Defendant to reasonable and diligently develop the Plaintiff's minerals [Id. at ¶¶ XXVII- LXXIX; Record Document 9, p.13].

[Record Document 11 at 7]. As Plaintiff stated in its original opposition to Defendant's Motion to Dismiss, "Plaintiff's claim is one to determine the intent of the parties to the 1950 Contract insofar as what mineral formations were intended by the parties to be included within the contract." [Record Document 9 at 14]. The Court, in keeping with Louisiana jurisprudence, has found that the granting clause of this Bath Form Lease is broad and unambiguous. Therefore, Plaintiff's remaining claims appear to be dependent upon a determination that the Bath Form Lease at issue is ambiguous. Without any ambiguity in the granting clause of the Lease at issue Plaintiff's remaining claims must necessarily fail.

**CONCLUSION**

Accordingly, for the foregoing reasons,

**IT IS ORDERED** that Defendant's Motion for Reconsideration [Record Document 15] be and is hereby **GRANTED.**

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss Pursuant to Rule 12(b)(6) be and is hereby **GRANTED** and all of Plaintiff's claims are **DISMISSED**.

A Judgment consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 24th day of February, 2011.

S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE